UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                CRIMINAL ACTION

VERSUS                                  NO: 19-71

ANIL PRASAD                             SECTION: "H"

### ORDER AND REASONS

Before the Court is Defendant Anil Prasad's Motion for Compassionate Release (Doc. 49). For the following reasons, the Motion is GRANTED.

### BACKGROUND

Defendant Anil Prasad reported to the Federal Correctional Institute in Oakdale, Louisiana ("Oakdale") on March 30, 2020 to serve a 24-month sentence for conspiracy to unlawfully prescribe controlled substances for no legitimate medical purpose and outside the course of professional practice and conspiracy to commit health care fraud.[1] Defendant moves this Court for compassionate release in light of the COVID-19 virus outbreak at Oakdale. Defendant asks this Court to release him to home confinement, either

---

[1] The Court again expresses its confusion and disappointment over defense counsel's failure to file a motion to continue Defendant's surrender date in light of the ongoing global pandemic. Such a filing would have avoided the unfortunate predicament in which Defendant and this Court now find themselves.

permanently or temporarily for the duration of the virus outbreak at the facility.[2]

On earlier consideration of this Motion, this Court held that it had no authority to consider Defendant's requests until he exhausted the requirements of 18 U.S.C. § 3852(c).[3] Since that time, Defendant has properly requested compassionate release from the warden of his facility and 30 days have lapsed since the warden's receipt thereof.[4] Accordingly, Defendant's request is now properly before this Court.

## LAW AND ANALYSIS

As of June 1, 2020, the Bureau of Prisons ("BOP") reports that, at Oakdale, 98 inmates are currently positive for COVID-19, 87 have recovered, and seven have died. Defendant alleges that if he contracts COVID-19, he is at high risk for complications because of his advanced age and pre-existing health conditions. Specifically, Defendant is 63 years old and suffers from coronary artery disease, hypertension, diabetes, and two, separate auto-immune disorders. He argues, therefore, that extraordinary and compelling reasons exist to modify his sentence.

"The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582."[5] Section 3582(c), as amended by the First Step Act, states in relevant part that:

> The court may not modify a term of imprisonment once it has been imposed except that-- (1) in any case-- (A) the court, upon motion

---

[2] Courts have held that 18 U.S.C. § 3582(c)(1)(A) "does not grant the Court the authority to release [a defendant] temporarily until the COVID-19 pandemic abates." United States v. Pawlowski, No. CR 17-390-1, 2020 WL 2526523, at *4 (E.D. Pa. May 18, 2020).
[3] Doc. 54.
[4] *See* Doc. 55.
[5] United States v. Garcia, 606 F.3d 209, 212 (5th Cir. 2010).

of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

The Sentencing Commission's policy statement regarding compassionate release sets forth what facts are considered "extraordinary and compelling." "Although historically sentence reductions could be ordered only upon a motion by the Director of the Bureau of Prisons, the First Step Act of 2018 amended the statute to additionally allow prisoners to petition the Court."[6] The Sentencing Commission's policy statements have not, however, been amended since the enactment of the First Step Act, "and consequently, a portion of the

---

[6] United States v. Perdigao, No. CR 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020).

policy statement now squarely contradicts 18 U.S.C. § 3582(c)(1)(A) as amended."[7] In recognizing this discrepancy,

> [m]any courts have concluded that this discrepancy means that the Sentencing Commission does not have a policy position applicable to motions for compassionate release filed by defendants pursuant to the First Step Act. Accordingly, other district courts have found that they have discretion to determine what constitutes an "extraordinary and compelling reason[ ]" on a case by case basis, and reliance on the policy statement may be helpful, but not dispositive.[8]

The policy statement states that, provided a defendant is not a danger to the community, extraordinary and compelling reasons exist under the following circumstances:

(A) Medical Condition of the Defendant.—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

    (I) suffering from a serious physical or medical condition,

    (II) suffering from a serious functional or cognitive impairment, or

    (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental

---

[7] *Id.*
[8] *Id.*

> health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).[9]

This Court finds that, in light of the heightened medical risk the COVID-19 pandemic poses to Prasad in particular, there are extraordinary and compelling reasons to order his immediate release from Oakdale.[10] This Court has been aware of Prasad's medical condition since reviewing his Presentence Report and has difficulty imagining a more vulnerable inmate. Defendant underwent quadruple bypass surgery in 2015 due to "accelerated coronary artery disease" and had stents replaced in 2018. He also suffers from diabetes, psoriatic arthritis, hypercholesterolemia, and auto-immune thyroiditis. The Centers for Disease Control has identified individuals with serious heart conditions, diabetes, and compromised immune systems as being at higher risk for severe illness if infected with COVID-19.[11] In addition, the conditions of incarceration, in which inmates sleep, eat, and shower in close quarters, make

---

[9] U.S.S.G. 1B1.13.

[10] *See* United States v. Zukerman, No. 16 CR. 194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (and cases cited therein); United States v. Burrill, No. 17-CR-00491-RS-1, 2020 WL 1846788, at *3 (N.D. Cal. Apr. 10, 2020) (and cases cited therin).

[11] People Who Are at Higher Risk for Severe Illness, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

controlling the spread of COVID-19 extremely difficult. Prasad is therefore unable "to provide self-care within the environment of a correctional facility" to avoid contracting COVID-19.[12]

The Court further finds that Prasad does not present a danger to the community. While serious, his offenses were non-violent and are unlikely to recur because his medical license has been suspended. In addition, the § 3553(a) sentencing factors support Prasad's release. This Court finds that, taking into account Prasad's medical condition and need for medical care, a modified sentence requiring Prasad to serve the remainder of his sentence on home confinement sufficiently reflects the seriousness of his offenses and promotes respect for the law.

Accordingly;

**IT IS ORDERED** that Defendant's Motion for Compassionate Release is **GRANTED**.

**IT IS FURTHER ORDERED** that Prasad's sentence is **MODIFIED** and **REDUCED** to time served pursuant to 18 U.S.C. § 3852(c). The remaining portion of Prasad's term of imprisonment (as calculated by the Bureau of Prisons) shall be served on supervised release with the special condition of home incarceration. The defendant is restricted to a 24-hour-a-day lock-down at his residence except for medical necessities and court appearances or other activities specifically pre-approved by the court. For the initial 12-month period of supervised release, the Defendant shall be monitored by radio frequency, to commence within 10 days of his release from imprisonment.

**IT IS FURTHER ORDERED** that the aforementioned term of home incarceration shall be followed by the three-year term of supervised release imposed in the original sentence. The originally imposed special conditions are

---

[12] *See* U.S.S.G. 1B1.13.

to remain in effect, except that monitoring by radio frequency will not be imposed.

**IT IS FURTHER ORDERED** that the Warden of Oakdale shall immediately release Anil Prasad from custody.

**IT IS FURTHER ORDERED** that upon his release Prasad shall self-quarantine at home for a period of 14 days.

New Orleans, Louisiana, on this 2nd day of June, 2020.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**